## COLLECTION OF FORFEITED AND DELINQUENT TAXES.

[Superior Court of Cincinnati, General Term.]

STATE, EX REL GIDEON C. WILSON, v. JOHN H. GIBSON, COUNTY TREASURER.* 

Decided, December, 1903.

*Taxes—Collection of Those Forfeited or Delinquent by Contract—Such a Collector Not an Officer—For an Officer Must Perform Sovereign Functions Continuously—Amendment to Section 1104 Constitutional—And Therefore Not Contrary to Public Policy—Burns Law Not Applicable—Contract May Extend Beyond Term of Treasurer—Scope of Contract Can Not Be Extended Beyond Plain Import of the Statute.*

1. The act passed April 4, 1902, amending Section 1104, Revised Statutes, by empowering the county treasurer to contract with a suitable person to collect by foreclosure or otherwise the forfeited and delinquent taxes prior to 1899, at a compensation not to exceed twenty-five per cent. of the amount collected, is not unconstitutional. Such a collector is not an officer under Section 2, Article X of the Constitution requiring his election.

2 In order to constitute such person an officer within the Constitution, he must perform some sovereign functions continuously and not transiently or incidentally. His position must have the attributes of tender and duration peculiar to public office, and should be not merely an employment for a definite and particular purpose.

3. To declare an act unconstitutional, it should appear clearly so. If there is any doubt about it, such doubt should be resolved in favor of the law.

4. If a contract is made in accordance with a constitutional and valid statute, it can not be contrary to public policy; nor is the compensation paid thereunder a diversion of the public funds.

5 Such a contract is not invalid because the money for the payment of the compensation was not in the treasury as required by the Burns Law. This law is not applicable to contracts, the funds to pay which are raised in a particular mode, which does not cause a deficit in the general fund, and to meet which increased taxes must be resorted to.

6. The time within which these collections must be made being fixed beyond the term of the office of the treasurer does not invalidate

---

*Affirmed by the Supreme Court, without report (OHIO LAW REPORTER, February 22, 1904).

the contract. This period of time is a limitation rather than an enlargement of the rights under the contract.

7. The scope of the contract can not be extended beyond the plain import of the language of the statute merely because it splits or separates an aggregate of delinquent or forfeited taxes and tends to destroy the symmetry of the system of tax collecting in this state. The form of such taxes may be changed by lapse of time, but the identity is not destroyed.

PFLEGER, J.; FERRIS, J., concurs; SMITH, J., concurs as to the result.

Wm. F. Chambers, an attorney at law, was employed under Section 1104, Revised Statutes, as amended April 4, 1902, authorizing the county treasurer to contract with a suitable person to collect, by an action foreclosing the lien of the state, or as otherwise provided by law, the forfeited and delinquent taxes for the years prior to 1899, at a compensation not to exceed twenty-five per cent. of the amount collected. A contract for two years on a twenty-five per cent basis was entered into, ratified and approved by the county commissioners and board of control.

An injunction against the carrying out of the contract and the payment of any compensation thereunder is sought on the ground that the act is unconstitutional and the contract is invalid.

Three questions are involved: (1), Is the act constitutional? (2), If so, what is the scope of its provisions? (3), Is the contract valid?

(1). It is claimed that because this act gives the county treasurer the power to contract with a suitable person to collect the delinquent or forfeited taxes, and that such person shall have the right to proceed under this section (1104) in the collection of said taxes and assessments (the treasurer being authorized to bring suit, or to collect as otherwise provided by law), that this constitutes such collector an officer within the meaning of the law and contravenes Section 2, Article X of the Constitution requiring such officers to be elected.

If the duties and powers given to this collector fall within the definition of an office this would be true.

As our Supreme Court said, it is much more difficult to give a faultless definition of what constitutes an office than it is to

determine whether the position of a given person comes fairly within such definition.

It is clear that certain attributes are often and usually connected with an office, but are not necessarily the controlling features, such as the designation of a name (*State* v. *Kennon,* 7 O. S., 557), compensation or emolument (*ib.,* p. 559; *State* v. *Brannan,* 49 O. S., 38), the requirement of a bond and oath of office (*State* v. *Halliday,* 61 O. S., 173).

In *State* v. *Jennings,* 57 O. S., 415, our Supreme Court said that to constitute a public office it is essential that certain independent public duties and part of the sovereignty of the state be exercised by the incumbent for the time being. It has exempted from its operation employes subject to the direction and control of some one else, and places the general distinction between an office and that of employment or contract on the ground that the former delegates some sovereign function of government which attaches for the time being. It does not criticise the ruling in *State* v. *Kendall,* 52 O. S., 356, that assistants and deputies are not recognized as such, although these perform many and in some cases all the duties of a principal. It also excludes from this definition a person who is clothed with merely *"transient and occasional or incidental"* authority as contradistinguished from duties which are *"durable, permanent and continuous"* as decided in *State* v. *Kennon, supra; Warwick* v. *State,* 25 O. S., 25; *State* v. *Brannan,* 49 O. S., 38.

In the late case of *State* v. *Halliday, supra,* it held the distinguishing characteristic to be the exercise of some part of the sovereignty of the state in an independent capacity and that the office must be *"of a continuous character as opposed to a temporary employment."* So it was held in *Wood County* v. *Pargillis,* 10 C. C., 376 (affirmed in 53 O. S., 680), that although a building committee exercised some of the powers of public officers such committee had not "that *continuity of office* which it seems is necessary to constitute and make them public officers. *They are appointed for a definite purpose and when that purpose is carried out and that duty performed, their rights and duties terminate. * * * They are not appointed from time to time for the pur-*

*pose of carrying out the general governmental duties of the country."*

If we read these decisions aright, Mr. Chambers would not be holding an office if he is either an employe subject to the direction and control of his principal, or a contractor who performed some sovereign acts transiently or occasionally, or as a mere incident to his position, and in order to carry out a particular purpose. Now let us apply these tests to his contract and the powers given him under the act in question. His contract reads as an employment in accordance with and to the full extent of the authority granted by Section 1104. This section provides that the treasurer *may* and when requested by the auditor of the state *shall* enforce the lien of the state by civil action *"in his own name as treasurer"* for unpaid taxes "(or for any special duplicate of delinquent or forfeited taxes or assessments)" evidently referring to the separate duplicate of forfeited and delinquent taxes and assessments mentioned in the subsequent portion of the act and being for the years prior to 1899. It also provides that the treasurer shall have power to contract with a suitable person for the collection of such delinquent or forfeited taxes and collections at not to exceed twenty-five per cent. of the amount collected, and that such person so contracting shall have the right to proceed under this section in the collection of such taxes and assessments "or as otherwise provided by law."

It is argued that the contractor would have the right to bring suit in his own name, or if not that he could compel the treasurer to bring suit in his name. There is certainly no language in the section which directly authorizes a suit in the contractor's name. That he shall have the right to proceed to collect the taxes under that section means whenever the treasurer *may* incline so to do or whenever the state auditor *shall* request him to bring suit; and then only in the name of the treasurer. To emphasize the retention of the discretion on the part of the county treasurer, the Legislature designedly included within its scope this special duplicate of 1899 for delinquent and forfeited taxes and assessments by inserting that clause immediately preceding the authority to bring such civil action. If the collector must bring suit in the name of the county treasurer, it naturally follows that the treas-

urer may refuse to bring suit, or if suit is brought that he would have the right to discontinue the same. The justice of the treasurer's act may be doubted, but not his discretion under this law.

If the intention of the Legislature had been to authorize suit in the contractor's name, it could easily have added after the clause that he shall have the right to proceed under this section the words "in his own name," as it did in the first part of the act. To give this law as it stands such an interpretation would appear to us to be judicial legislation.

Then it is argued that the contractor is authorized to proceed "as may be otherwise provided by law," and that this gives him the right to proceed as he pleases, vesting him with official discretion and with all the functions of the county auditor. It is asked: Has he the right to proceed by distress under Sections 1094 and 1095; by rule of court under Section 1097; through the treasurer of another county under 1098 and 1099; or by garnishment or attachment under 1102? Unfortunately all these sections refer to personal property, and they have therefore no application to a contract for the collection of taxes on real estate. Section 1103 makes some provision for an action by the county treasurer for the recovery of taxes before justices of the peace and other courts, but the suits are also to be brought in his own name. As real estate taxes are a personal debt it is no doubt true that the treasurer might bring an action for personal judgment, but again if the contractor sought to take advantage of this, it would necessarily be in the treasurer's name because he is given no such power in his own name.

What acts of state sovereignty are included within his duties? He is not usurping the general powers of the treasurer to distribute the taxes proportionately among those entitled to receive them, or to the keeping of accounts, or making the settlements or the payment of public debts. It may be that the collection of delinquent and forfeited taxes on real estate and the enforcement of the lien of the state could be termed part of the sovereign acts. But is not this a mere transient authority incidental to the carrying out of the contract? Can not the state through the Legislature sell or transfer its stale claims for taxes together with the lien upon the property, inasmuch as this lien on real estate is a

mere creation of the statute? If it can, the purchaser would have the right to sue in his own name to enforce the lien of the state, and yet it could scarcely be claimed that the purchaser under such circumstances must of necessity be an officer brought into being by an election.

The powers of Mr. Chambers under his contract are not as ample as those of a transferee of taxes could be, because he is subject to the control of the county treasurer at least in the commencement and prosecution of a suit. If the statute had authorized the employment of a suitable attorney instead of a suitable person, his powers would have been the same, and yet it would scarcely be urged that such an attorney was an officer and would require an election. It seems to us therefore that if this appointment has any attribute of sovereignty, it falls fairly within the exception to the general rule as being transient and merely incidental.

Let us apply another test: Does the position have that continuity of term and of duties contemplated in the use of the terms "tenure" and "duration" as applied to a public office, or is it an employment only for a definite purpose?

Although the appointment is for two years it is evident that his duties terminate as soon as he has accomplished the collection of certain specified forfeited and delinquent taxes prior to 1899. If he has not accomplished it within the two years, his limitation of time has expired and he must surrender. If, for example, there are only two cases of forfeited or delinquent taxes prior to 1899 and he collects these in a day, his contract of employment ceases. He can not hold on for the remainder of the two years of his appointment. If the delinquencies and forfeitures are numerous and Mr. Chambers calls to his aid a thousand persons, and succeeds in collecting all of the numerous delinquencies and forfeitures in a month, again his contract or employment would terminate. So on the other hand if he fails to collect all of these taxes within the two years because they are too numerous, his contract is at an end. Another may or may not succeed him, but there is no compulsion on the part of any one to appoint a successor. The appointment does not continue from time to time to carry out the general governmental duties of the state. It continues only for a definite purpose, viz., the collection of particular taxes or

assessments; and when that purpose has been accomplished his rights and duties terminate. There is no tenure or permanency to the position which is usual or common to a public office. In our judgment therefore this case comes plainly within the principle decided in *Wood County* v. *Pargillis, supra.*

If the petition is not one of mere assistant or deputy (*Brady* v. *Treasurer,* Superior Court in General Term, 6 Nisi Prius, 126), it is at most a mere contract or the creation of a new position or agency, possibly embodying acts of sovereignty, but which acts are merely transient or incidental to the accomplishment of a definite and particular purpose, having no attributes of tenure and duration peculiar to a public office. In these respects the appointment lacks the essential elements necessary to constitute the same a public office within the purview of the Constitution.

If, in addition to what has been stated, we apply the rule that to declare an act unconstitutional, it should appear clearly so, and that as long as there is reasonable doubt, such a doubt should be resolved in favor of the law (*State* v. *Kendall, supra*), and that a constitutional provision which is disenabling should receive a restricted rather than an enlarged interpretation (*Warwick* v. *State, supra*), there ought to be no difficulty in sustaining the act in question.

It is argued with considerable force that it is also a question whether the title to an office can be thus tried and determined in a suit in equity instead of by proceedings in *quo warranto*. *State* v. *Jennings,* 57 O. S., 425, citing C. J. Tindal; *Vail* v. *Craig,* 21 C. C., 175 (affirmed 64 O. S., 588.)

(2). The second objection that the contract is contrary to public policy and void because it attempts to invest Chambers with sole authority to make collections and prosecute suit in the name of the treasurer, is properly answered when it is said that if a contract is in accordance with the statute and the statute is constitutional, there can be no public policy contrary to a valid law; and as the court below indicated, the point is covered by the ruling of the Supreme Court in an analogous case of appointment as a tax inquisitor in *State, ex rel,* v. *Crites, Auditor,* 48 O. S., 142, holding that the employment of persons to assist in adding to the tax duplicate property unlawfully omitted therefrom, and in order

that all property subject to taxation may be equally taxed, is not prohibited by the Constitution. The collection of delinquent and forfeited taxes necessarily tends to the equal and fair distribution of all taxes.

(3). The next objection that the contract in question is a wholesale "farming out" of the main duties of the treasurer, whose compensation should cover the expense of such collections, and that therefore the percentage allowed Chambers under the contract is a gross misapplication of the public funds, is also met by the decision of the Supreme Court in the case last cited. On this point the court said on page 170:

"This contract is claimed to divert the public funds from their proper objects and is, therefore, illegal. This claim is not well founded; the contract violates no statute of the state; on the contrary it is a contract expressly authorized by an act of the Legislature passed in 1888, 'To secure fuller and better returns of property for taxation.' Nor is it a diversion of the public funds, but is rather a mode of compensating services actually performed for the public, and, to quicken the energies of the servant, this compensation is made to depend on the efficiency of his services."

(4). We need pay but passing notice to the objection that the twenty-five per cent. allowed by the terms of the contract is too large, and is also a gross misapplication of the public funds, inasmuch as this is authorized by the statute and is a discretion fairly lodged in the county treasurer and the county commissioners, which can not be reveiwed by this court.

(5). It is also claimed that the contract is invalid because the money for the payment of the compensation of the contractor was not in the treasury and was not certified by the auditor at the time of the making of such contract as required by Section 2438*b*, nor had an estimate and appropriation been made under the provisions of Sections 1004 to 1009. *Cincinnati* v. *Holmes,* 56 O. S., 104, and *State, ex rel,* v. *Halliday, supra,* are cited as against this proposition, and *Comstock* v. *Nelsonville,* 61 O. S., 288, in favor of it. These cases are not inconsistent with each other. *State* v. *Halliday* simply held that as between two irreconcilable statutes effect must be given to the one which is later. *Cincinnati* v. *Holmes* held practically the same thing; but the Supreme Court said in the Comstock case that the Burns Law being one of a general

nature it is doubtful whether exceptions of a local nature can be constitutionally made thereto. Both of these cases, however, specified the objects of the Burns Law to be a check to prevent the incurring of an indebtedness by a municipal corporation (by discharging from the general fund) and (beyond the ordinary resources of its revenue and whereby an annual excess of indebtedness is created over these revenues), and not as applicable to a provision authorizing a particular mode in which funds are to be raised, and which does not cause a deficit in a general fund to meet which increased taxation must be resorted to. Chambers in · this case is not obtaining his compensation from funds already in the county treasury, which are applicable to the payment of other public liabilities already provided for. It is true that the particular forfeited and delinquent taxes were designed to do that very thing if paid into the treasury, but inasmuch as the usual facilities of the government authorities have been insufficient to produce the money and it required additional labor and expense to obtain the same such as Mr. Chambers has testified to, namely, search for non-residents and securing purchasers who will assume the taxes, an additional compensation is necessary to obtain better returns in order to meet the exigencies of the state and county governments. This could only be done by the making of a contract similar to the one in question providing for compensation of a percentage of the amount collected out of the collections so made by him. And this allowance should then be apportioned ratably among all the funds entitled to share in the distribution.

It should also be observed that the compensation mentioned is not "in an amount" not to exceed twenty-five per cent. of the amount collected, but a compensation of twenty-five per cent. *of the amount collected.* This is strengthened by the fact that when suit is brought by the prosecuting attorney his compensation is "payable out of the treasury of the county," and no such stipulation is made with reference to the collector.

(6). Again its illegality is urged on the ground that the contract undertakes to fix the term of employment for two years, which is beyond the term of the treasurer himself, contrary to the law laid down in *Commissioners* v. *Arnold,* 65 O. S., 479, that "the employment of such collectors can not be turned into an office to

be held to the end of the treasurer's term or for any definite period. His employment is to collect the delinquent list which has been read, or some part thereof, and when that is done his employment ends."

In the case cited the design of the parties may have been to enlarge the scope of Arnold's contract under the law by making the term cover future lists, and it was held that "each delinquent list must be read and an employment made to collect the same, but there can be no employment of collectors to collect future lists."

In the case at bar the limitation of time of his appointment could in no event cover more than the special duplicate for forfeited and delinquent taxes "prior to the year 1899," and as has been said heretofore this term is a limitation rather than an enlargement of the rights of the contractor.

It would not be making for the parties a new contract to hold that the same is good only during the term of office of the treasurer. The contract may be terminated before the end of the term of the present treasurer by death, revocation or abandonment, or for some other cause, or by the accomplishment of the purpose thereof, and in such an event the lap beyond the treasurer's term would be immaterial. At all events, until that situation arises it is unnecessary in this kind of a case to determine the rights of the respective parties.

(7). It is now argued that if the court finds the law valid as to the collection of a duplicate of forfeited and delinquent taxes prior to 1899, that such separate duplicate has not been made, and that as this is similar to the case last cited, becomes material in the letting of a public contract as a condition precedent to the right to recover. Opposite counsel insist that this was not raised in the pleadings or the argument in the court below. We find no such issues raised in the pleadings. Mr. Hynicka testified, page —, in answer to the question whether a special duplicate had been made up, that there were two duplicates, one list and one regular duplicate. There is no testimony contradictory of this, and while the answer is not clear it at least tends to support the theory that there was such special duplicate. Besides, plaintiff is now estopped from raising the question in the proceeding in error.

(8). From what has been stated we agree with the trial court in sustaining the constitutionality and validity of the act and contract in question.

Coming now to the scope of the contract and the limitations under it, counsel for defendant is most positive in his claims that the act authorizes the collection of forfeited and delinquent taxes for the year 1899 and thereafter, or at least all those taxes which were forfeited and delinquent at the time the contract with Mr. Chambers was made. He insists that to limit such forfeited and delinquent taxes only to the years prior to 1899 would be not only erroneous but destroy the symmetry of the system of tax collecting in this state. In other words, to so fix the time would be splitting or separating the aggregate of all taxes which may have become either delinquent or forfeited, and compel the treasurer to receive part payments not justified by law or custom and disarrange the entire system. Assuming that it would disarrange the ordinary method adopted by the authorities or that it would make more difficult or add additional labor to the collection of the other separate part of the delinquent and forfeited taxes, this would form no sound argument for changing the wording or the construction of the law as it stands.

So it is argued that the figures "1899" are merely surplusage or meaningless. We find no such difficulty. It requires but a cursory examination of the statute to learn that the legislators inserted this period of time particularly and designedly. It is not necessary to gauge it by the aid of punctuation or by grammatical rules. The evident object of the employment of a collector in this county was to collect the stale claims for taxes. At the very commencement of the section it refers to a special duplicate of delinquent and forfeited taxes and assessments. Near the middle of the section it provides "that the auditor may place upon a separate duplicate the forfeited and delinquent taxes and assessments for the years prior to 1899 upon the request of the treasurer, and the validity and priority of the lien of such taxes and assessments shall not be affected thereby."

And in the next sentence, separated by a semi-colon, follows the authority to contract with a suitable person "to collect any such delinquent or forfeited taxes and assessments."

There is no authority in any other part of the section to employ a collector for any taxes except those forfeited and delinquent prior to 1899. If the delinquent taxes prior to 1899 were subsequently paid they can not of course become the subject of collection. If they were merged into a forfeiture they may have changed their form but they can nevertheless be separated and collected. In order that there might be no question as to the splitting or separating of an aggregate of delinquent or forfeited taxes, the clause was evidently added that the validity and priority of lien by the making of this duplicate should not be affected.

The history of these sections of the statutes seems to conform to this construction. In 1880 the act provided for the collection of a duplicate of delinquent and forfeited taxes for the years prior to 1879. This may have been passed at a time when it was the last duplicate of that nature in existence, and it. may not have caused the objectionable splitting of the accumulated taxes. The amendment of 1902 merely altered the date from 1879 to 1899. This was certainly intentional. As stated before, it may be somewhat troublesome for the auditor to make such a duplicate, and still more so for the treasurer to divide the collections, but it is the result of the act, and it is wholly optional with the treasurer to invoke his authority thereunder.

There can be no doubt that the act in question limits the contract to delinquent and forfeited taxes and assessments for the years prior to 1899. As the contract empowers him to make these collections "to the full extent of the authority granted by said section," the authority of the statute has not been exceeded.

The conclusion therefore is that the act in question is valid and constitutional and the contract will be sustained, limiting its scope to the collection of delinquent and forfeited taxes and assessments for the years prior to 1899.

Decree accordingly, affirming the findings of the court below.

*Ampt, Ireton, Collins & Schoenle,* County Solicitors, and *Oliver B. Jones,* for plaintiff in error.

*Frank F. Dinsmore,* for defendant in error.